UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| LAURA YARNELL, Trustee under the Trust of ) <br> S. Cameron Yarnell, on Behalf of the Children of ) <br> S. Cameron Yarnell, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> TRANSAMERICA LIFE INSURANCE COMPANY ) <br> and SUNTRUST INVESTMENT SERVICES, INC., ) <br> ) <br> Defendants. ) | No.: 1:09-CV-49 <br> (VARLAN/CARTER) |

## **MEMORANDUM OPINION**

This civil action is before the Court on defendant Transamerica Life Insurance Company's ("Transamerica's") Motion of Transamerica Life Insurance Company to Dismiss the Negligence Claim in Plaintiff's Amended Complaint [Doc. 23] and Motion of Transamerica Life Insurance Company to Dismiss the Negligence Claim in Plaintiff's Second Amended Complaint [Doc. 41]. Plaintiff Laura Yarnell has filed a response in opposition to the motions to dismiss [Doc. 33]. Transamerica has filed a reply to the response [Doc. 38].

This civil action is also before the Court on defendant SunTrust Investment Services, Inc.'s ("SunTrust's") Motion to Dismiss [Doc. 26] and SunTrust Investment Services, Inc.'s Motion to Dismiss [Doc. 42]. Ms. Yarnell has filed a response in opposition to the motions to dismiss [Doc. 39]. SunTrust has filed a reply to the response [Doc. 40]. Finally, Ms. Yarnell has filed a supplemental brief in response to defendants' pending motions for

summary judgment and motions to dismiss in light of the deposition of plaintiff's expert witness [Doc. 109].

These motions are now ripe for the Court's consideration.

## I. Background

Transamerica issued a life insurance policy, Policy No. 42074562, to Mr. S. Cameron Yarnell on January 1, 2003 [Doc. 23-1]. The beneficiary of that policy was an irrevocable trust established for Mr. Yarnell's children [*Id.*]. The face amount of the policy is $1,000,000.00 [*Id.*].

Mr. Yarnell died on October 3, 2007 [Doc. 32, ¶ 2]. Transamerica refused to pay any benefits into the beneficiary trust [*Id.*]. Transamerica contends that the policy lapsed on or about October 6, 2006 due to the nonpayment of premiums [Doc. 4, ¶ 1]. Transamerica explains that, prior to his death, Mr. Yarnell completed a reinstatement application, and that the policy was reinstated on May 3, 2007 [*Id.*]. Transamerica argues, however, that Mr. Yarnell's reinstatement was based on material misrepresentations that rendered the reinstatement void [*Id.*].

Ms. Yarnell filed the complaint [Doc. 1-1] in this case against Transamerica in the Chancery Court for Hamilton County, Tennessee on January 22, 2009. Transamerica filed a notice of removal [Doc. 1] to this Court on February 27, 2009. Transamerica filed an answer to the complaint on March 6, 2009 [Doc. 4]. Ms. Yarnell filed an amended complaint

[Doc. 14] on September 1, 2009, adding SunTrust Securities, Inc. and SunTrust Annuities, Inc. as defendants,[1] and alleging that:

- (1) Transamerica is liable under the policy for $1,000,000.00;

- (2) Transamerica was negligent in hiring and training its agents;

- (3) Transamerica was negligent in failing to follow "proper procedures" and "best practices" to ensure that the policy did not lapse;

- (4) SunTrust was negligent in failing to set up "proper procedures" to ensure that the policy did not lapse; in failing to properly train its agents; and in failing to properly have insurance specialists on duty; and that

- (5) Transamerica and SunTrust failed to properly notify the policyholder that premiums were delinquent.

[*Id.*, ¶¶ 3-8].

Transamerica filed a motion to dismiss the negligence claim asserted against it in Ms. Yarnell's amended complaint for failure to state a claim upon which relief may be granted [Doc. 23], and a brief in support of that motion [Doc. 24], on September 28, 2009. Transamerica argues that the only duties it owes to Ms. Yarnell are those it assumed pursuant to the life insurance policy in this case [Doc. 23]. Transamerica argues further that, because it owes no additional duties to Ms. Yarnell, Ms. Yarnell cannot establish all of the essential elements of a claim of negligence against Transamerica [*Id.*]. Transamerica argues on this basis that Ms. Yarnell's negligence claim against it be dismissed [*Id.*].

---

[1] As later modified by the Court, "SunTrust Investment Services, Inc." is used to refer collectively to "SunTrust Securities, Inc." and "SunTrust Annuities, Inc." [*see* Doc. 29].

SunTrust filed a motion to dismiss the negligence claim asserted against it in Ms. Yarnell's amended complaint [Doc. 26], and a memorandum of law in support of that motion [Doc. 27], on September 30, 2009, raising the same lack of duty argument as Transamerica. SunTrust also argues that Ms. Yarnell's claim against it is unsupported by any facts [Doc. 26]. SunTrust argues on this basis that Ms. Yarnell's claims against it be dismissed [*Id.*].

Ms. Yarnell filed a response to Transamerica's motion to dismiss [Doc. 33] on October 12, 2009. In that response, Ms. Yarnell argues that (1) Transamerica is liable for the negligence of SunTrust, its agent; and that (2) Transamerica is also liable because it failed to properly select an agent "who had a knowledgeable insurance employee and failed to insure that its agent followed the 'best practices' in the issuance and servicing of the policies" [*Id.*]. Transamerica filed a reply [Doc. 38] on October 19, 2009, countering the agency arguments Ms. Yarnell raised in her response.

Ms. Yarnell also filed a response to SunTrust's motion to dismiss [Doc. 39] on October 19, 2009. In that response, Ms. Yarnell argues that SunTrust had a duty to notify her that the policy had lapsed, and to give her an opportunity to cure the premium deficiency [*Id.*]. SunTrust filed a reply [Doc. 40] on October 26, 2009.

Ms. Yarnell filed a second amended complaint [Doc. 32] on October 12, 2009. Transamerica filed a motion to dismiss the negligence claim in Ms. Yarnell's second amended complaint [Doc. 41] on October 27, 2009, incorporating by reference the arguments made in its earlier motion to dismiss. SunTrust filed a motion to dismiss the negligence

4

claim in Ms. Yarnell's second amended complaint [Doc. 42] on October 27, 2009, also incorporating by reference the arguments made in its earlier motion to dismiss.

The Court has carefully considered the motions to dismiss, the responses, the replies, and the underlying pleadings. For the reasons that follow, Transamerica's motion to dismiss [Doc. 23] and SunTrust's motion to dismiss [Doc. 26] will be denied as moot. Transamerica's motion to dismiss [Doc. 41] will be granted. SunTrust's motion to dismiss [Doc. 42] will also be granted. SunTrust will be dismissed as a party to this case.

**II.     Standard of Review**

Federal Rule of Civil Procedure 8(a)(2) sets out a liberal pleading standard. *Smith v. City of Salem*, 378 F.3d 566, 576 n.1 (6th Cir. 2004). Rule 8(a)(2) requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the [opposing party] fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Detailed factual allegations are not required, but a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555. A formulaic recitation of the elements of a cause of action will not do. *Id.* Nor will an "unadorned, the-defendant-unlawfully harmed-me accusation." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). A pleading must instead "contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436-37 (6th Cir. 1988) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d

5

1101, 1106 (7th Cir. 1984)). "Determining whether a complaint states a plausible claim for relief will [ultimately] . . . be a context-specific task that requires th[is Court] to draw on its judicial experience and common sense. *Iqbal*, 129 S.Ct. at 1937.

### III. Applicable Law

Because jurisdiction in this case is predicated purely on diversity of citizenship, this Court must apply the substantive law of Tennessee. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). Under Tennessee law, "the validity of a contract and the substantive rights of the parties to the contract are governed by the laws of the state contemplated by the parties." *Mackey v. Judy's Foods, Inc.*, 867 F.2d 325, 328 (6th Cir. 1989). "[I]n the absence of evidence to the contrary, the parties are presumed to have intended to contract pursuant to the laws of the state in which the contract was entered into." *Id.*

Here, the insurance contract at issue does not contain any enforceable choice of law provision. With respect to insurance contracts without enforceable choice of law provisions, "Tennessee courts apply the substantive law of the state in which the policy was issued and delivered." *Standard Fire Ins. Co. v. Chester-O'Donley & Assocs., Inc.*, 972 S.W.2d 1, 5 (Tenn. Ct. App. 1998); *see also* Tenn. Code Ann. § 56-7-102 ("[E]very contract [issued by any insurance company doing business in Tennessee] shall be held as made in [Tennessee] and construed solely according to the laws of [Tennessee]."). The record indicates that the insurance policy in this case was issued and delivered to the Yarnells at 1816 Hixson Pike,

Chattanooga, Tennessee [Doc. 23-1]. The substantive law of Tennessee thus controls this Court's interpretation and analysis of the facts and circumstances in this case.[2]

## IV. Analysis

Transamerica argues that the negligence claims Ms. Yarnell raises against it in her second amended complaint should be dismissed [Doc. 41]. SunTrust argues that all of the claims Ms. Yarnell raises against it in her second amended complaint should be dismissed [Doc. 42].[3] The Court addresses these arguments below.

### 1. Negligence Claims Raised Against Transamerica

Transamerica argues that the negligence claims Ms. Yarnell raises against it in her second amended complaint should be dismissed, because Transamerica owes no duty to her in tort. "In order to establish a prima facie claim of negligence . . . a plaintiff must establish the following essential elements: '(1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause.'" *Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 364 (Tenn. 2009) (quoting *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995)). The Court may only grant Transamerica's motion to dismiss the negligence claims if Ms. Yarnell has failed to allege either direct or inferential allegations

---

[2] The parties do not dispute that Tennessee law governs the Court's analysis in this case.

[3] The Court construes the second amended complaint as raising breach of contract claims and negligence claims against both Transamerica and SunTrust.

7

respecting all the material elements to sustain a recovery on those claims under some viable legal theory.

*Kinser v. Thomas Jefferson Ins. Co.*, C.A. No. 170, 1989 WL 43814 (Tenn. Ct. App. May 2, 1989) resolves the issue presently before the Court. In *Kinser*, defendant insurance company Thomas Jefferson issued plaintiff Douglas Kinser a fire insurance policy covering property in Lake City. *Id.* The policy period ran from July 9, 1985 to July 9, 1986. *Id.* On July 15, 1986, the property was damaged by fire. *Id.* Mr. Kinser notified Steve Pyatt, an agent for Thomas Jefferson, of the loss. *Id.* Mr. Kinser was notified that his insurance had expired on July 9, 1986. *Id.* Determining that Mr. Kinser's insurance policy had lapsed by the time the fire occurred, Thomas Jefferson refused to cover Mr. Kinser's loss. *Id.*

Mr. Kinser subsequently filed suit against Thomas Jefferson and Mr. Pyatt, arguing that Mr. Pyatt "had the duty to notify [him] of the expiration of the policy and the need for renewal." *Id.* at *5. The *Kinser* court found this argument unpersuasive. *Id.* It noted that Mr. Pyatt made no representation that a notice of renewal would be sent to Mr. Kinser prior to the expiration of his policy, and that no proof existed to establish an agreement between Mr. Kinser and Mr. Pyatt for Mr. Kinser "to procure and keep in effect insurance on the property." *Id.* Holding that, "[i]n the absence of any agreement, or contract to effect, maintain, or renew insurance, no duty to do so arises," *id.* (citing *Nidiffer v. Clinchfield R.R.*

*Co.*, 600 S.W.2d 242, 246 (Tenn. Ct. App. 1980) (quoting 3 Couch on Ins. 2d § 25:58), the court granted summary judgment for Thomas Jefferson.[4]

The key facts in this case are indistinguishable from those in *Kinser*. Under the terms of the policy in this case, Ms. Yarnell agreed to pay the policy premiums on a quarterly basis [Doc. 23-1]. To keep the policy in force, each premium had to be paid in advance [*Id.*]. The policy contains a grace period, however, of thirty-one days after each premium date within which Ms. Yarnell could pay each premium [*Id.*]. If the grace period were triggered due to nonpayment of premiums, the policy requires that Transamerica send notice to Ms. Yarnell's last known address informing her that the grace period had begun to run, and that she must pay the premium due before the expiration of the grace period if she wished to keep the policy in effect [*Id.*]. If Ms. Yarnell failed to pay the premium before the expiration of the grace period, the policy would lapse [*Id.*]. The policy contained no terms requiring Transamerica to provide the insured with a notice of renewal [*see id.*].

Transamerica mailed Ms. Yarnell a premium-due notice prior to the October 6, 2006 premium due date.[5] Ms. Yarnell failed to pay the policy premium by that date. Transamerica mailed Ms. Yarnell a notice on October 26, 2006, informing her that the grace period had

---

[4] *See also Haas v. Montgomery Ward & Co.*, 812 F.2d 1015, 1016 (6th Cir. 1987) ("[A]n action in tort will not arise for breach of contract unless the action in tort would arise independent of the existence of the contract.") (applying Michigan law). As discussed *infra*, the negligence claims Ms. Yarnell asserts are with respect to a duty neither defendant had, namely, ensuring that the insurance policy did not lapse.

[5] Transamerica provides, and Ms. Yarnell does not deny, the factual assertions in this paragraph [*see* Doc. 24]. These assertions are discussed more fully in the Court's memorandum opinion on the motions for summary judgment.

nearly expired. Ms. Yarnell did not pay the policy premium by the end of the grace period. Consequently, the life insurance policy lapsed in November 2006.[6]

Ms. Yarnell does not allege in her pleadings that Transamerica made any agreement, other than the agreement to notify her when premiums were due and when grace periods had begun to run, to "procure and keep in effect" the life insurance policy. Instead, Ms. Yarnell alleges that Transamerica "failed to do anything to prevent the lapsing of this policy" [Doc. 32, ¶ 8].[7] As outlined in *Kinser*, however, an insurer has no duty to prevent the lapse of an insurance policy absent a contractual obligation requiring it to prevent that lapse. Because Ms. Yarnell cannot demonstrate that Transamerica owed her that duty, her claims for negligence must fail.

Ms. Yarnell argues that *Kinser* is inapposite because the opinion "focused on whether the insurance contract required the insurance company to notify the [insured] that there w[ould] be automatic renewal of a policy subject to a premium payment" [Doc. 39]. She argues that the present case is distinct from *Kinser* because Transamerica was responsible for notifying her of non-payment of premiums during the grace period according to the terms of the policy [*Id.*]. She further indicates that she "intends to present proof that, in Tennessee,

---

[6] As referenced in the Court's memorandum opinion on the motions for summary judgment, the insurance policy was reinstated at a later date at the Yarnells' request. That reinstatement is not relevant to the issues presently before the Court.

[7] She also alleges, at various points in her second amended complaint, that Transamerica was negligent in hiring and training agents, and in failing to ensure that proper procedures and best practices were followed in order to prevent a policy lapse [Doc. 32, ¶¶ 4, 5]. These claims would seem to fall under the broader category of failing to prevent the lapse of the insurance policy.

10

the standard for an agent in th[e present] situation is to notify the insured of the cancellation and the attending grace period" [*Id.*]. She avers that this proof will establish Transamerica's negligence under Tennessee law [Doc. 39].

Ms. Yarnell is mistaken. The policy requires Transamerica to notify Ms. Yarnell prior to the premium due date that payment is due, and that the grace period has begun to run if payment is not received by the premium due date. It contains no requirement that Transamerica take any other steps to prevent the policy from lapsing. The question of whether the notifications Transamerica sent to Ms. Yarnell satisfy the policy's notification requirements goes to Ms. Yarnell's breach of contract claim, not to any claim of negligence. And proof of the "standard" for notification of a policy cancellation in Tennessee, where no notification is required by the policy entered into by the parties, is simply not relevant here.

Ms. Yarnell's reliance in her supplemental filing on *Wood v. Newman, Hayes & Dixon Ins. Agency*, 905 S.W.2d 559 (Tenn. 1995) is also misplaced. Plaintiff in *Wood* had procured "all-risk" insurance from an insurance carrier to protect her marina from ice and snow damage from 1979 to 1985. *Id.* at 560. In 1985, as the policy's expiration date approached, the insurance carrier notified plaintiff and her insurance agent that the all-risk policy would not be renewed. *Id.* Plaintiff's insurance agent was subsequently unable to procure like insurance for plaintiff, despite making entreaties to two dozen insurance companies on plaintiff's behalf. *Id.* In the agent's communications with the plaintiff about the new policy ultimately secured for the plaintiff, however, the agent never mentioned the issue of ice and snow coverage. *Id.* An ice and snow storm later caused a portion of the plaintiff's marina

to collapse. *Id.* When her insurance carrier refused to cover the damage, the plaintiff sued, arguing that the agent was negligent in failing to inform plaintiff that the replacement policy did not cover damage from ice and snow. *Id.* at 561.

*Wood* held on these facts that "an insurance agent employed to maintain insurance coverage for a client may be held liable on a negligence theory if the agent fails to use reasonable care and diligence in continuing the insurance, either by obtaining a renewal or replacement policy or by properly maintaining an existing policy." *Id.* at 562. *Wood* further held that such an "agent is charged with an affirmative duty to notify the client if he is unable to continue the previous coverage, and the failure of the agent to so notify the client will subject him to liability." *Id.*

While *Wood* may impose a duty on an insurance agent who, at the behest of an insured, has undertaken to secure the renewal of an insured's coverage, *Wood* says nothing about the duty of an insurance agent who has not been so directed.[8] Thus the rule appropriate to the facts of this case is not the rule in *Wood*, but rather that in *Kinser*: there is no duty to

---

[8] The cases upon which *Wood* relies address other situations in which a contract between an insurance agent to procure insurance for another is express or implied between the two. *See Ezell v. Assocs. Capital Corp.*, 518 S.W.2d 232, 234 (Tenn. 1974) (creation of an "implied contract" to procure collision insurance and keep it in effect during the life of an automobile loan); *Massengale v. Hicks*, 639 S.W.2d 659, 660 (Tenn. Ct. App. 1982) ("[A]gent who, with a view to compensation for his services, undertakes to procure insurance for another, and unjustifiably and through his fault or neglect, fails to do so, will be held liable for any damages resulting therefrom.").

12

keep insurance in effect absent an agreement to do so. Ms. Yarnell has raised no allegations in her second amended complaint that any such agreement ever existed in this case.[9]

Accordingly, Ms. Yarnell's negligence claims against Transamerica will be dismissed. The Court now turns to the negligence claims and the breach of contract claim Ms. Yarnell raises against SunTrust in her second amended complaint.

### 2. Negligence Claims Raised Against SunTrust

SunTrust argues that the negligence claims Ms. Yarnell raises against it in her second amended complaint should be dismissed, because SunTrust owes no duty to her in tort. As with Transamerica, Ms. Yarnell alleges that SunTrust "failed to do anything to prevent the lapsing of this policy" [Doc. 32, ¶ 8]. She also contends that SunTrust was negligent in failing to set up proper procedures to prevent a policy lapse, in failing to properly have insurance specialists on duty, and in failing to properly set up a checklist and procedures to assist customers to prevent a policy lapse [*Id.*, ¶¶ 7, 8].

Ms. Yarnell's claims against SunTrust, as a limited agent of Transamerica's charged with administering some aspects of the policy at issue, are even weaker than those against Transamerica. SunTrust had no more of a duty to ensure that the policy did not lapse than did Transamerica. For all of the reasons just given for the dismissal of Ms. Yarnell's

---

[9] The Court notes that Ms. Yarnell, in her affidavit attached to her response to defendants' motions for summary judgment, avers that "[s]he was never advised by Chris Ford [the insurance agent] [sic] anything about the policy nor did he ever speak to her about the policy" [Doc. 43-1].

negligence claims against Transamerica, her negligence claims against SunTrust will also be dismissed.

The Court now turns to the breach of contract claim Ms. Yarnell raises against SunTrust in her second amended complaint.

### 3. Breach of Contract Claim Raised Against SunTrust

SunTrust argues that the breach of contract claim Ms. Yarnell raises against it in her second amended complaint should be dismissed because the complaint lacks sufficient factual allegations to support her claim for relief [Doc. 42]. Ms. Yarnell responds only that she "has made sufficient allegations in the complaint regarding [SunTrust's] conduct" to maintain a breach of contract claim [Doc. 39].

The Court will dismiss Ms. Yarnell's breach of contract claim against SunTrust, not because Ms. Yarnell fails to allege sufficient facts to support a plausible claim for breach of contract, but because Ms. Yarnell can point to nothing that suggests that SunTrust has breached any legal duty it owes to her under that contract. *See Kimbro Equities I v. Metro. Fed. Savs. & Loan Ass'n*, Nos. 95-5118 & 95-5238, 1996 WL 452860, at *1 (6th Cir. Aug. 9, 1996) (agent of party to a contract may be held liable for remedies in tort but not for remedies in contract). The insurance policy in this case was between Ms. Yarnell and Transamerica. As discussed in Transamerica's reply to Ms. Yarnell's response to the defendants' motions for summary judgment, which the Court considers more fully in its memorandum opinion on defendants' motions for summary judgment, Transamerica concedes that "SunTrust was Transamerica's agent for certain purposes" [Doc. 47]. The

terms of the policy, however, require Transamerica, and not SunTrust, to notify the policyholder if a grace period has begun to run, and notify the policyholder that she must pay the premium due before the expiration of the grace period in order to prevent the policy from lapsing [Doc. 23-1].[10]

Ms. Yarnell has offered no evidence that Transamerica delegated this notification authority to SunTrust. The express terms of the policy reserve that authority to Transamerica. Allegations in her second amended complaint that SunTrust "failed to properly notify the owner of the policy that premiums were delinquent" and "failed to notify the owner of the policy in writing that the grace period had begun which is required by their policy" [Doc. 32, ¶ 9] thus identify breaches of duties that SunTrust simply did not owe to Ms. Yarnell. These allegations instead go to the question of whether Transamerica breached its contractual duties to Ms. Yarnell.

Accordingly, SunTrust's motion to dismiss Ms. Yarnell's breach of contract claim against it will be granted. SunTrust will be dismissed as a party to this case.

IV. Conclusion

As Transamerica correctly points out, this is a contracts case [*see* Doc. 23]. Accordingly, the Motion of Transamerica Life Insurance Company to Dismiss the

---

[10] The policy identifies "We" as "Transamerica Occidental Life Insurance Company," and "You" as the "owner of this policy," or Ms. Yarnell [Doc. 23-1]. It provides that "We will let you know, by sending a notice to your last known address, that the grace period has begun and that you must pay the premium due before the 31 day grace period has expired" [*Id.*]. It provides further that "If you do not pay the premium due, your policy will lapse" [*Id.*].

Negligence Claim in Plaintiff's Second Amended Complaint [Doc. 41] will be granted. SunTrust Investment Services, Inc.'s Motion to Dismiss [Doc. 42] will be granted. The Motion of Transamerica Life Insurance Company to Dismiss the Negligence Claim in Plaintiff's Amended Complaint [Doc. 23], and SunTrust's Motion to Dismiss [Doc. 26], will be denied as moot. SunTrust will be dismissed as a party to this case.

An order reflecting this opinion will be entered.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE