UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

LAURA YARNELL, Trustee under the Trust of       )
S. Cameron Yarnell, on Behalf of the Children of )
S. Cameron Yarnell,                             )
                                                )
            Plaintiff,                          )
                                                )
v.                                              )   No.: 1:09-CV-49
                                                )       (VARLAN/CARTER)
TRANSAMERICA LIFE INSURANCE COMPANY )
and SUNTRUST INVESTMENT SERVICES, INC.,         )
                                                )
            Defendants.                         )

## MEMORANDUM OPINION

This civil action is before the Court on defendant Transamerica Life Insurance

Company's ("Transamerica's") Motion for Summary Judgment [Doc. 36] and defendant

SunTrust Investment Services, Inc.'s ("SunTrust's") Motion for Summary Judgment [Doc.

34]. Plaintiff Laura Yarnell has filed a response to defendants' motions for summary

judgment [Doc. 43]. Transamerica has filed a reply to the response [Doc. 47]. SunTrust has

also filed a reply to the response [Doc. 53].

In addition, plaintiff has filed a response to the reply [Doc. 59]. Transamerica has

filed a motion to strike plaintiff's response to the reply [Doc. 60]. SunTrust has also filed

a motion to strike the response to the reply [Doc. 62]. Transamerica has filed a supplemental

brief in support of its motion for summary judgment, in light of the deposition of plaintiff's

expert witness [Doc. 107]. And plaintiff has filed a supplemental brief in response to

defendants' pending motions for summary judgment and motions to dismiss in light of the deposition of plaintiff's expert witness [Doc. 109].

In light of the Court's order granting SunTrust's motion to dismiss, SunTrust's motion for summary judgment and its motion to strike will be denied as moot. Transamerica's motions are now ripe for the Court's consideration.

## I.    Background

Transamerica issued a life insurance policy, Policy No. 42074562, to Mr. S. Cameron Yarnell on January 1, 2003 [Doc. 23-1]. The beneficiary of that policy was an irrevocable trust established for Mr. Yarnell's children [*Id.*]. The face amount of the policy is $1,000,000.00 [*Id.*].

Mr. Yarnell died on October 3, 2007 [Doc. 32, ¶ 2]. Transamerica refused to pay any benefits into the beneficiary trust [*Id.*]. Transamerica contends that the policy lapsed on or about October 6, 2006 due to the nonpayment of premiums [Doc. 4, ¶ 1]. Transamerica explains that, prior to his death, Mr. Yarnell completed a reinstatement application, and that the policy was reinstated on May 3, 2007 [*Id.*]. Transamerica argues, however, that Mr. Yarnell's reinstatement was based on material misrepresentations that rendered the reinstatement void [*Id.*].

Ms. Yarnell filed the complaint [Doc. 1-1] in this case against Transamerica in the Chancery Court for Hamilton County, Tennessee on January 22, 2009. Transamerica filed a notice of removal [Doc. 1] to this Court on February 27, 2009. Transamerica filed an answer to the complaint on March 6, 2009 [Doc. 4]. Ms. Yarnell filed an amended complaint

[Doc. 14] on September 1, 2009, adding SunTrust Securities, Inc. and SunTrust Annuities, Inc. as defendants,[1] and alleging that:

(1)     Transamerica is liable under the policy for $1,000,000.00;

(2)     Transamerica was negligent in hiring and training its agents;

(3)     Transamerica was negligent in failing to follow "proper procedures" and "best practices" to ensure that the policy did not lapse;

(4)     SunTrust was negligent in failing to set up "proper procedures" to ensure that the policy did not lapse; in failing to properly train its agents; and in failing to properly have insurance specialists on duty; and that

(5)     Transamerica and SunTrust failed to properly notify the policyholder that premiums were delinquent.

[*Id.*, ¶¶ 3-8].

Transamerica filed a motion to dismiss the negligence claim asserted against it in Ms. Yarnell's amended complaint for failure to state a claim upon which relief may be granted [Doc. 23], and a brief in support of that motion [Doc. 24], on September 28, 2009. Transamerica argues that the only duties it owes to Ms. Yarnell are those it assumed pursuant to the life insurance policy in this case [Doc. 23]. Transamerica argues further that, because it owes no additional duties to Ms. Yarnell, Ms. Yarnell cannot establish all of the essential elements of a claim of negligence against Transamerica [*Id.*]. Transamerica argues on this basis that Ms. Yarnell's negligence claim against it must be dismissed [*Id.*].

---

[1] As later modified by the Court, "SunTrust Investment Services, Inc." is used to refer collectively to "SunTrust Securities, Inc." and "SunTrust Annuities, Inc." [*see* Doc. 29].

Ms. Yarnell filed a response to Transamerica's motion to dismiss [Doc. 33] on October 12, 2009. In that response, Ms. Yarnell argues that (1) Transamerica is liable for the negligence of SunTrust, its agent; and that (2) Transamerica is also liable because it failed to properly select an agent "who had a knowledgeable insurance employee and failed to insure that its agent followed the 'best practices' in the issuance and servicing of the policies" [*Id.*]. Transamerica filed a reply [Doc. 38] on October 19, 2009, countering the agency arguments Ms. Yarnell raised in her response.

Ms. Yarnell filed a second amended complaint [Doc. 32] on October 12, 2009. Transamerica filed a motion to dismiss the negligence claim in Ms. Yarnell's second amended complaint [Doc. 41] on October 27, 2009, incorporating by reference the arguments made in its earlier motion to dismiss.

For the reasons set forth in the Court's memorandum opinion addressing the defendants' motions to dismiss, the motions to dismiss have been granted. SunTrust has been dismissed as a party to this case.

Transamerica filed a motion for summary judgment [Doc. 36], and a brief in support of that motion [Doc. 37], on October 15, 2009. In its brief, Transamerica argues that no genuine issue of material fact exists as to whether (1) the policy lapsed in November 2006, or whether Mr. Yarnell (2) made material misrepresentations regarding his health history to Transamerica in his application for reinstatement of the policy following the lapse, which increased Transamerica's risk of loss under the policy, and which rendered the reinstatement void [*Id.*].

Ms. Yarnell filed a response to the motions for summary judgment [Doc. 43] and a brief in support [Doc. 43-5] on November 4, 2009. In her response, Ms. Yarnell argues that (1) because the allegedly false statements made in the application for reinstatement were not attached to the reinstated policy itself, Transamerica cannot use those statements to declare the reinstated policy void; that (2) the affidavit relied upon by the defendants to verify that notice of the policy lapse was provided cannot provide verification as a matter of law; and that (3) a SunTrust employee, acting as Transamerica's agent, was negligent in handling the insurance policy, and that Transamerica, as principal, is liable for that negligence [*Id.*]. Transamerica filed a reply [Doc. 47] to Ms. Yarnell's response on November 11, 2009, arguing that questions of whether (1) the reinstatement application was attached to the reinstated policy, whether (2) Ms. Yarnell received written notices regarding the premium due on the policy or the grace period, whether (3) the affidavit at issue is legally sufficient to verify that notice of the grace period was provided to Ms. Yarnell, or whether (4) SunTrust was an agent for Transamerica in some respects, do not present genuine issues of material fact that can withstand summary judgment.

Ms. Yarnell filed a response [Doc. 59] to the reply briefs in support of her motion for summary judgment on November 25, 2009. Transamerica filed a motion to strike that response as untimely and impermissible [Doc. 60]. The parties also filed supplemental briefs after the deposition of plaintiff's expert witness [Docs. 107, 109].

The Court has carefully reviewed the motion for summary judgment and the accompanying briefs in light of the applicable law. For the reasons that follow,

Transamerica's motion for summary judgment [Doc. 36] and its motion to strike [Doc. 60] will be granted.

## II.    Standard of Review

Summary judgment is proper only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party bears the burden of establishing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986).  The Court views the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002).  To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law.  *Id.*

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder.  *Id.* at 250.  The judge does not weigh the evidence or determine the truth of the matter.  *Id.* at 249.  Thus, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial–whether, in other words, there are any

genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

## III. Applicable Law

Because jurisdiction in this case is predicated purely on diversity of citizenship, this Court must apply the substantive law of Tennessee. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). Under Tennessee law, "the validity of a contract and the substantive rights of the parties to the contract are governed by the laws of the state contemplated by the parties." *Mackey v. Judy's Foods, Inc.*, 867 F.2d 325, 328 (6th Cir. 1989). "[I]n the absence of evidence to the contrary, the parties are presumed to have intended to contract pursuant to the laws of the state in which the contract was entered into." *Id.*

Here, the insurance contract at issue does not contain any enforceable choice of law provision. With respect to insurance contracts without enforceable choice of law provisions, "Tennessee courts apply the substantive law of the state in which the policy was issued and delivered." *Standard Fire Ins. Co. v. Chester-O'Donley & Assocs., Inc.*, 972 S.W.2d 1, 5 (Tenn. Ct. App. 1998); *see also* Tenn. Code Ann. § 56-7-102 ("[E]very contract [issued by any insurance company doing business in Tennessee] shall be held as made in [Tennessee] and construed solely according to the laws of [Tennessee]."). The record indicates that the insurance policy in this case was issued and delivered to the Yarnells at 1816 Hixson Pike,

Chattanooga, Tennessee [Doc. 23-1]. The substantive law of Tennessee thus controls this Court's interpretation and analysis of the facts and circumstances in this case.[2]

## IV. Analysis

Under Tennessee law, the interpretation of an insurance contract is a matter of law for determination by the Court. *Rainey v. Stansell*, 836 S.W.2d 117, 118 (Tenn. Ct. App. 1992). The Court must construe insurance policies in the same manner as any other contract, *Alcazar v. Hayes*, 982 S.W.2d 845, 848 (Tenn. 1998), and give effect to the parties' intentions as reflected in the written contract of insurance. *Harrell v. Minn. Mut. Life Ins. Co.*, 937 S.W.2d 809, 814 (Tenn. 1996).

Before addressing the substantive issues raised by the parties, the Court must first consider two preliminary issues: the dismissal of SunTrust, and the motions to strike Ms. Yarnell's response to the defendants' replies. The Court considers each below.

### A. Dismissal of SunTrust

For the reasons set forth in the Court's memorandum opinion on the defendants' motions to dismiss, SunTrust's motion to dismiss has been granted. SunTrust has been dismissed as a party to this case. Accordingly, the Court will deny SunTrust's motion for summary judgment [Doc. 34] and its motion to strike [Doc. 62] as moot.

---

[2] The parties do not dispute that Tennessee law governs the Court's analysis in this case.

### B.      Transamerica's Motion to Strike

Before considering Transamerica's motion for summary judgment, the Court must also decide whether to strike Ms. Yarnell's response [Doc. 59] to the replies filed by Transamerica and SunTrust.  Local Rule 7.1 provides that the briefing schedule for all motions shall consist of (1) the opening brief and any accompanying affidavits or other supporting material; (2) the answering brief and any accompanying affidavits or other material; and (3) any reply brief and accompanying material.  E.D.TN. LR 7.1(a).  "No additional briefs, affidavits, or other papers in support of or in opposition to a motion shall be filed without prior approval of the Court."  *Id.* 7.1(d).

Here, Ms. Yarnell has not sought leave from the Court to file her response to the defendants' replies.  Nor does her response contain new information or new arguments that Ms. Yarnell could not have raised in her response to the motions for summary judgment.[3]  Accordingly, the Court will grant Transamerica's motion to strike [Doc. 60].  The Court will therefore disregard Ms. Yarnell's response to defendants' replies.

Having addressed these preliminary matters, the Court now considers what remains: Transamerica's motion for summary judgment on Ms. Yarnell's breach of contract claim.

---

[3] Ms. Yarnell raises three issues in her untimely response: the credibility of Mr. Ford, the insurance agent in this case; the affidavit of William Brittain Oehmig as to the role and responsibilities of an insurance agent; and the deposition testimony of Ms. Susanna Darr, explaining that "alcoholics do not call alcoholic treatment centers hospitals," but instead call them "rehabilitation centers" [Doc. 59].  For the reasons set forth in the Court's memorandum opinion dismissing Ms. Yarnell's negligence claims, the first two issues have no bearing on the disposition of this case.  Nor does the final issue, for the reasons set forth *infra* Part IV.C.2.  Thus, even were the Court to consider these arguments, doing so would make no difference to the outcome of the case.

For Transamerica to prevail on its motion, the Court must find that no genuine issue of material fact exists with respect to this claim, and that judgment as a matter of law is appropriate in this case. The Court considers each of the issues underlying this motion below.

### C. Breach of Contract Claim Raised Against Transamerica

The Court must answer two questions relevant to Ms. Yarnell's breach of contract claim against Transamerica: first, whether Transamerica satisfied its notification requirements to the policyholder under the policy when it lapsed, and second, if so, whether the policyholder then made material misrepresentations on the reinstatement application that rendered the reinstatement void. The Court considers each issue below.

### 1. Satisfaction of Notification Requirements

The first question before the Court is whether Transamerica satisfied its notification requirements to Ms. Yarnell under the policy when it lapsed. Under the policy terms, Ms. Yarnell agreed to pay the policy premiums on a quarterly basis [Doc. 23-1]. Each premium had to be paid in advance to keep the policy in force [*Id.*]. The policy contains a grace period, however, of thirty-one days after each premium date within which Ms. Yarnell could remit payment for an unpaid premium [*Id.*]. If the grace period were triggered, the policy required that Transamerica send notice to Ms. Yarnell's last known address, informing her that the grace period had begun to run, and that she must pay the premium due before the expiration of the grace period if she wished to retain the policy [*Id.*]. If Ms. Yarnell failed to pay the premium before the expiration of the grace period, the policy would lapse [*Id.*].

In support of its motion for summary judgment, Transamerica explains that its automated policy administration system, abbreviated as "LIPAS" ("Life Insurance Policy Administration System"), kept track of premiums due and premiums paid on Transamerica's life insurance policies [Doc. 37]. During the time that the insurance policy in this case was in force, Transamerica had programmed LIPAS to generate the following printed notices, to be mailed to Ms. Yarnell:

(1)     A premium notice, generated and mailed to the policy owner approximately thirty (30) days prior to the premium due date;

(2)     A reminder notice, generated and mailed to the policy owner twenty (20) days after the premium due date, if the premium had not been paid by that time; and

(3)     A lapse notice, generated and mailed to the policy owner fifty-three (53) days after the premium due date, if the premium had not been paid following the mailing of the reminder notice.

[*Id.*]. Prior to 2007, when the notices at issue were allegedly mailed, Transamerica did not keep hard copies of these notices [*Id.*]. Instead, Transamerica kept Billing Reference Lists ("BRLs"), which were generated by LIPAS contemporaneously with the printing of the above-described notices [*Id.*]. Each BRL contains the policy number, the premium due date, the type of notice generated, the premium amount, and the name and address to which the notice was mailed for each policy for which a printed notice was generated [*Id.*]. Transamerica avers that its standard practice was to mail each notice to the policyholder on the date the notice was generated or one day later [*Id.*].

Tennessee Code Annotated § 56-7-2303(b) provides that the "affidavit of any responsible officer, clerk or agent of the insurance company authorized to mail the notice that it is the standard practice of the company to duly address and mail to policyowners the notice required by this section shall be prima facie evidence that the notice has been duly given." Pursuant to that provision, Transamerica filed the affidavit of John M. Cox, the Senior Business Systems Analyst in Transamerica's Customer Service Department, and previously the Senior Customer Service Representative for Transamerica [*Id.*]. In his affidavit, Mr. Cox explains that, once LIPAS generated the notices for a given day, a "Transamerica employee then took the notices from LIPAS's printing room to its on-site Office Services Department" [Doc. 36-1]. He explains further that an "Office Services employee or employees then placed the printed notices into a mail sorting machine," which "folded the notices, placed them in envelopes along with self-addressed return envelopes, sealed and affixed first-class postage to the envelopes" [*Id.*]. He explains finally that, once this process was complete, "the envelopes were taken to a 'pre-sort house,'" where the envelopes were sorted according to zip code, and where a United States Postal Service employee or employees retrieved the envelopes for mailing [*Id.*].

The BRL for September 6, 2006 reflects that LIPAS generated a premium notice that day as to the policy at issue for the premium due on October 6, 2006 [*Id.*]. The premium due on October 6, 2006 was not paid [Doc. 37]. The BRL for October 26, 2006 reflects that LIPAS generated a reminder notice that day for the premium due on October 6, 2006 [Doc. 36-1]. The premium due on October 6, 2006 was nevertheless not paid by November 6,

2006, the end of the grace period [*Id.*]. The BRL for November 28, 2006 reflects that LIPAS generated a lapse notice that day for the policy [Doc. 37]. Transamerica avers that none of these notices, after they were mailed, were returned as undeliverable [*Id.*]. Transamerica further avers that, based upon this evidence, no genuine issue of material fact exists as to whether Transamerica complied with the applicable notification provisions of the policy [Doc. 37]. As a result, Transamerica argues that it is entitled to judgment as a matter of law.

Ms. Yarnell makes several arguments in response. First, she argues that Tenn. Code Ann. § 56-7-2303 applies only to the mailing of premium notices, and as a result is not relevant to the mailing of the grace period notice or the lapse notice [Doc. 43-5]. Second, she argues that Tenn. Code Ann. § 56-7-2303(b) requires that the affidavit provided be signed by someone authorized to mail the notice at issue, and that Mr. Cox was not a person authorized to do so [*Id.*]. Third, she argues that Transamerica's obligation under the policy is to notify the owner at the onset of the grace period to prevent policy lapse, and that she never received any such notice [*Id.*]. Finally, she argues that the evidence Transamerica has provided is insufficient to demonstrate that Transamerica sent the policyholder the notices at issue as required by the notification provisions of the policy [*Id.*].

In response to Ms. Yarnell's first argument, Transamerica argues that Ms. Yarnell has failed to offer any reason why the type of proof that is sufficient under Tenn. Code Ann. § 56-7-2303(b) to establish that a premium notice was mailed is insufficient to establish that a grace period notice was mailed [Doc. 47]. In response to Ms. Yarnell's second argument, Transamerica argues that Mr. Cox's affidavit is legally sufficient under Tenn. Code Ann. §

56-7-2303(b) because Mr. Cox is familiar, based on his own personal knowledge, with Transamerica's recordkeeping policies and procedures [*Id.*]. In response to Ms. Yarnell's third argument, Transamerica argues that the policy terms and the applicable law require only that Transamerica send notice to the policyholder, not that the policyholder receive notice [*Id.*]. Finally, and in reponse to Ms. Yarnell's fourth argument, Transamerica argues that it has provided sufficient evidence to demonstrate that Transamerica sent Ms. Yarnell the notices at issue as required by the notification provisions of the policy [*Id.*]

No genuine issue of material fact exists as to whether Transamerica satisfied the policy's notification requirements. "[I]n a business where a large number of letters are customarily mailed in a routine fashion, evidence of the custom of mailing, along with a copy of the letter kept in the records of the business, is sufficient to support a finding that the original was mailed." *Blurton v. Grange Ins. & Cas. Co.*, 159 S.W.3d 1, 11 (Tenn. Ct. App. 2004).[4] "[T]estimony from the person who mails the [letter] is not necessary to show a mailing, so long as there is evidence that the notice was taken to the post office." *Id.* at 12.[5] "Such proof can be supplied by establishing a business routine, and showing that a document

---

[4] The Court finds that the relevant BRLs in this case, which reflect the policy number, the premium due date, the type of notice generated, the premium amount, and the name and address to which the notice was mailed as to each policy for which a printed notice was generated, are tantamount to "a copy of the letter kept in the records of the business" as described in *Blurton.*

[5] *See also Hotaling v. Chubb Sovereign Life Ins. Co.*, 241 F.3d 572, 581 (7th Cir. 2001) ("[I]n today's technologically advanced world [mass] mailings: (1) are routinely performed by computers; and (2) frequently contain a large volume of notices mailed at a single time. If [courts] were to require testimony from a company's mailing clerk, insurance companies would basically be forced to abandon the use of computers in mass mailings.").

was mailed in the due course of business." *Id.* (citing *Cherokee Ins. Co. v. Hardin*, 302 S.W.2d 817, 819 (Tenn. 1957); *see also Groover v. Torkell*, 645 S.W.2d 403, 407 (Tenn. Ct. App. 1982) (finding that while it was "true that there is no direct evidence that any of the notices [at issue] were mailed to [the policyholder]," "evidence that an act was customarily done under like circumstances will be received as evidence that it was done on the particular occasion").

Transamerica has established that the notices at issue in this case were customarily mailed in the due course of business as part of a business routine for handling such mailings. There is no evidence that any of these notices were returned as undeliverable [*see* Doc. 37]. Nor does Ms. Yarnell dispute that the address to which these notices were mailed is incorrect. The only evidence to support Ms. Yarnell's allegation that these notices were not mailed is her denial of receipt, and even that is belied in part by the fact that the remittance stub from the lapse notice that Transamerica mailed to her on November 28, 2006 was attached to a payment Transamerica received on December 11, 2006 [*see id.*].

Next, the Court finds that Ms. Yarnell's objections to this type of proof are without merit. Provision of an affidavit by an agent authorized to mail a notice, pursuant to the terms of Tenn. Code Ann. § 56-7-2303(b), is one way, but not the only way, to make out a prima facie case that notice has been duly provided. As the case law demonstrates, evidence that notice was sent as part of a customary business practice will also suffice. Thus, even if Ms. Yarnell is correct that Tenn. Code Ann. § 56-7-2303(b) applies only to the mailing of premium notices, or that Mr. Cox did not qualify as an agent under that provision,

Transamerica's alternative offer of proof with respect to its customary mailing practices is more than sufficient to meet this burden.

Next, the Court finds Ms. Yarnell's claim that she never received notice of the onset of the grace period to be irrelevant. That is because Transamerica must only show that it sent the notice, not that Ms. Yarnell received it. Transamerica has offered ample proof that the notices were in fact sent. Based on the evidence presented, no reasonable factfinder could determine that Transamerica failed under the requirements of the policy to send the notices at issue to Ms. Yarnell. Summary judgment on this issue is appropriate for that reason.[6]

The Court distinguishes two cases cited by Ms. Yarnell. The insurance company in the first case, *Finch v. Monumental Life Ins. Co.*, 820 F.2d 1426, 1428 (6th Cir. 1987), produced evidence at trial that it was its "business practice to send notices to all insureds . . . according to a computer program that always produced notices in time for insureds to make premium payments." The insurance company attempted to demonstrate that "since it was a uniform and continuous business practice as to all insureds, [the membership services department] must have sent notice to" the policyholder. *Id.* The insurance company presented no direct evidence that a notice had been sent to the policyholder, however. *Id.*

---

[6] The Court notes that, in a recent case involving similar policy terms, it has treated notification evidence like that offered by Transamerica as sufficient to establish that an insurance company satisfied its notification obligations under those terms. *See Sharp v. Valley Forge Life Ins. Company*, 490 F. Supp. 2d 909, 910-14 (E.D. Tenn. 2007). Moreover, Judge Thomas Phillips of this Court has granted summary judgment on the same issued based upon nearly identical evidence. *See Letard v. Gen. Am. Life Ins. Co.*, No. 3:05-CV-25, 2007 WL 540792, at *4 (E.D. Tenn. Feb. 15, 2007) (finding that any duty insurance company had to send notices to policyholder was satisfied by proof that computers generated and sent notices to policyholder in the ordinary course of business.).

The jury in *Finch* found, on the basis of the evidence presented, that the insurance company failed to meet its burden of proof that notice had been sent, and the Court of Appeals found sufficient evidence to support that finding. *Id.* at 1430-31.

In *Finch*, the insurance company maintained no record of individual mailings. *Id.* Here, by contrast, the relevant BRLs set out in great detail the nature of each notice generated by LIPAS on any given day. Moreover, the theory advanced by the insurance company in *Finch*–that notice must have been sent because the computer responsible for producing such notices had been doing so since 1980, and because there had been no computer malfunctions during the period when the notice at issue would have been mailed, *see id.*–is distinct from the theory advanced by Transamerica. Here, Transamerica has offered extensive proof of its customary mailing practices, as well as evidence generated in connection with those practices that the specific notices at issue were prepared and mailed in the ordinary course of business. The only evidence offered to the contrary is Ms. Yarnell's denial of receipt. Such denial, in the face of overwhelming evidence to the contrary, is insufficient to create a genuine issue of material fact.

Ms. Yarnell also cites *Stooksbury v. Am. Nat'l Prop. and Cas. Co.*, 126 S.W.3d 505 (Tenn. Ct. App. 2003), a Tennessee case decided before *Blurton*. In that case, the court upheld a verdict in favor of a policyholder, where the jury found a copy of a notice of insurance cancellation bearing an official receipt from a post office in Nashville "for transmission to" the insured, that was located among the records of the insurance company,

insufficient proof that the notice was mailed in accordance with the terms of the insurance policy.  *Id.* at 513.

The crucial difference between *Stooksbury* and the instant case is that the policy in *Stooksbury* provided that "[p]roof of mailing shall be sufficient proof of notice" of cancellation of that policy.  *Id.* at 508.  Here, the policy contains no such provision.  Instead, it requires that notices be "sent" to the policyholder [*see* Doc. 23-1].  As explained in *Blurton*, where such notices are sent in large numbers by a business in a routine fashion, establishing that a routine existed and that the letter was mailed in the due course of business constitutes sufficient proof that such a notice was in fact sent.

The Court finds there to be no genuine issue of material fact as to whether Transamerica satisfied its notification obligations under the policy.  The policy thus lapsed on November 6, 2006.  The reinstatement portion of the policy provides that the policy may be reinstated, however, if the policyholder (1) requests reinstatement in writing within five years of the date of lapse; (2) the insured is still insurable by Transamerica's standards; and (3) one-twelfth of the annual premium at the time of lapse, and the premium due at the time of reinstatement, are paid [Doc. 23-1].  The effective date of any reinstatement is the date of the request [*Id.*].

The Yarnells submitted a reinstatement application on December 18, 2006, and the policy was subsequently reinstated [Doc. 36-1].  While the policy would ordinarily be incontestable by Transamerica after two years from the date of issue, it became contestable for a new two-year period beginning after the policy lapsed and was reinstated for

nonpayment of premiums [*see* Doc. 23-1]. Because Mr. Yarnell died on October 3, 2007, within the two-year contestability period following the policy's reinstatement, Transamerica is not prevented from contesting its liability under the policy. It does so here.

The next question before the Court is thus whether a genuine issue of material fact exists as to whether the policyholder made material misrepresentations on his reinstatement application that rendered the reinstatement void. The Court addresses that issue below.

### 2. Material Misrepresentations

Transamerica argues that no genuine issue of material fact exists as to whether Mr. Yarnell made material representations on the reinstatement application that rendered the reinstatement void. As just explained, a policyholder who wishes to reinstate a lapsed policy must do so under the terms of the policy. The parties do not dispute that the Yarnells requested reinstatement within five years of the date of the lapse, or that the sum of one-twelfth of the annual premium at the time of lapse, and the premium due at the time of reinstatement, was paid along with submission of the application for reinstatement. Transamerica argues, however, that Mr. Yarnell was not insurable by Transamerica's standards at the time the application for reinstatement was submitted, and that the reinstatement is void because Mr. Yarnell made material misrepresentations on his application for reinstatement [Doc. 37].

The underlying facts are not in dispute. The reinstatement application asked the proposed insured to answer the following questions, among others:

> 9.　　During the past five years, have you:
>     (a)　　Had any illness, injury or disease?
>     (b)　　Consulted or been examined by any physician?
>     (c)　　Required any hospitalizations?

[Doc. 36-1]. Mr. Yarnell answered "No" to questions 9(a) and 9(c), but answered "Yes" to question 9(b) [*Id.*]. The reinstatement application further instructed the proposed insured, for "Yes" answers, to include in the "Remarks" section "all dates, diagnoses, duration of any illness and . . . names and addresses of all attending physicians and hospitals" [*Id.*]. In the "Remarks" section, Mr. Yarnell wrote, "John Larramore [the name of Mr. Yarnell's personal physician]. Broke four ribs in skiing accident in 2003" [*Id.*]. Mr. Yarnell included no other statements in the "Remarks" section. Mr. and Mrs. Yarnell both signed the reinstatement application, which provided just above their signatures that, "I/We represent that the statements and answers given in this application are complete and true to the best of my/our knowledge and belief and may be relied on by [Transamerica] as the basis for reinstatement of the policy" [*Id.*].

Mr. Yarnell died on October 3, 2007 [Doc. 32]. Ms. Yarnell submitted a claim for benefits on behalf of the beneficiary trust under the policy on December 3, 2007 [Doc. 37]. Transamerica alleges that a subsequent investigation into the claim revealed the following facts:

> (1)　　On March 8, 2006, Mr. Yarnell was admitted to The Meadows, an alcohol and drug rehabilitation facility located in Wickenberg, Arizona.

Mr. Yarnell was an in-patient at The Meadows from March 8, 2006, to April 9, 2006. While he was at The Meadows, a physician diagnosed Mr. Yarnell with alcohol dependence, major depression, and hypertension. Prior to his discharge on April 9, 2006, another physician at the Meadows, Dr. William Firth, diagnosed Mr. Yarnell with alcohol dependence, depression, and hypertension.

(2)     On June 13, 2006, Mr. Yarnell went to Memorial Hospital in Chattanooga, Tennessee, as a result of having drunk rubbing alcohol. While Mr. Yarnell was at Memorial Hospital on June 13, 2006, a physician diagnosed him with alcoholism.

(3)     On July 11, 2006, Mr. Yarnell was voluntarily admitted to the Cornerstone of Recovery, a rehabilitation facility located in Louisville, Tennessee. Upon his admission, Mr. Yarnell was "slightly intoxicated" and his admitting diagnosis was "Acute Intoxication and/or Withdrawal Potential." Mr. Yarnell was in medical detox at the Cornerstone of Recovery until July 14, 2006, at which time he was transferred to "adult residential." Mr. Yarnell left the facility against medical advice on July 22, 2006. While at the Cornerstone of Recovery, Mr. Yarnell received care from, among others, physician Gary O'Shaughnessy, the Medical Director.

(4)     On or about July 24, 2006, Mr. Yarnell was admitted to the intensive out-patient therapy program at Parkridge Valley Hospital in Chattanooga, Tennessee due to alcoholism. Mr. Yarnell was discharged from Parkridge on August 23, 2006. While at Parkridge, Mr. Yarnell participated regularly in Alcoholics Anonymous.

[*Id.*]. In short, Mr. Yarnell spent more than seventy days in hospital or alcohol treatment programs for his alcoholism, but did not mention this treatment on his application for reinstatement.

Based upon the facts uncovered in its investigation, Transamerica argues that Mr. Yarnell made material misrepresentations on his reinstatement application that rendered that reinstatement void [Doc. 37]. Transamerica argues further that, had it known Mr. Yarnell's

history of alcoholism when considering whether to reinstate the policy, it would have classified Mr. Yarnell as an alcoholic, and denied reinstatement [*Id.*]. In support of that argument, Transamerica explains that its guidelines at the time the reinstatement application was submitted provide that an alcoholic who continues to abuse alcohol is an "uninsurable risk," and that Transamerica would only consider insuring someone with a history of alcoholism after a minimum of two years with no alcohol use had elapsed [*Id.*]. Transamerica concludes by arguing that Mr. Yarnell's history of alcoholism at the time he submitted his reinstatement application "substantially increased his mortality risk" and, accordingly, "increased the risk of loss to Transamerica" [*Id.*].

Ms. Yarnell makes a single argument in response: that the alleged misrepresentations were not attached to the policy as required by Tenn. Code Ann. § 56-7-2307(4), and therefore cannot be used by Transamerica to void the policy [Doc. 43-5]. She does not otherwise contest the allegations of physician and hospital visits set forth *supra*, except to say that the "false statements, if any, were not attached to the policy" as required by Tenn. Code Ann. § 56-7-2307(4). Relying on *Linder v. Metro. Life Ins. Co.*, 255 S.W.43 (1923), Transamerica replies that Tenn. Code Ann. § 56-7-2307(4) applies only to alleged misrepresentations attached to original policies, not to reinstatements, and that Transamerica's failure to attach the reinstatement application to the reinstated policy is of no legal consequence [Doc. 47].

The Court finds that no genuine issue of material fact exists as to whether Mr. Yarnell made material misrepresentations in his application for reinstatement, or whether these material misrepresentations increased Transamerica's risk of loss. Tenn. Code Ann. §

56-7-103 authorizes an insurance company to deny a claim for benefits in two circumstances: if the insured made intentional misrepresentations on the application for insurance, or if the insured made misrepresentations that increased the insurer's risk of loss. *Smith v. Tenn. Farmers Life Reassurance Co.*, 210 S.W.3d 584, 589 (Tenn. Ct. App. 2006). In this case, Transamerica relies on the second prong of this statute, arguing that Mr. Yarnell's misrepresentations regarding his medical history increased its risk of loss [Doc. 37]. Determining whether a particular misrepresentation increases an insurance company's risk of loss is a question of law for the court. *Broyles v. Ford Life Ins. Co.*, 594 S.W.2d 691, 693 (Tenn. 1980).

It is well settled in Tennessee that a misrepresentation in an application for insurance increases the insurance company's risk of loss if it naturally and reasonably influences the judgment of the insurer in making the contract. *Smith*, 210 S.W.3d at 590 (citations omitted). It is also well settled that the courts may use the questions an insurance company asks on its application to determine the types of conditions or circumstances that the insurance company considers relevant to its risk of loss. *Id.* (citing *Johnson v. State Farm Life Ins. Co.*, 633 S.W.2d 484, 487 (Tenn. Ct. App. 1981)). And in Tennessee, "the courts frequently rely on the testimony of insurance company representatives to establish how truthful answers by the proposed insured would have affected the amount of the premium or the company's decision to issue the policy." *Smith*, 210 S.W.3d at 590 (citations omitted). "A finding that the insurer would not have issued the policy had the truth been disclosed is unnecessary; a showing that the insurer was denied information that it, in good faith, sought and deemed

necessary to an honest appraisal of insurability is sufficient to establish the grounds for an increased risk of loss." *Id.*

The reinstatement application in this case specifically instructs the proposed insured to disclose any illnesses, injuries or diseases in the past five years, as well as any consultations or examinations by physicians, and any hospitalizations [Doc. 36-1]. While the Court notes the possibility, however slim, of a legal dispute over whether alcoholism qualifies as an "illness, injury or disease,"[7] it nevertheless notes the lack of dispute that Mr. Yarnell (1) was examined by two physicians at The Meadows in March or April of 2006; (2) was admitted to Memorial Hospital in Chattanooga in June 2006, and was examined by a physician there; (3) received care from a physician at Cornerstone Recovery in Louisville, Tennessee in July 2006; and (4) was admitted to Parkridge Valley Hospital in Chattanooga, Tennessee in July 2006 [Doc. 36-1]. Mr. Yarnell's failure to disclose these physician examinations and hospital visits constituted material misrepresentations in his reinstatement application. Ms. Tracy Livingston, an underwriter for Transamerica, has sworn that the information Mr. Yarnell did not disclose to Transamerica on his reinstatement application would have increased the risk of loss to Transamerica [*Id.*]. She has also sworn that Transamerica would not have reinstated the policy had Mr. Yarnell included these representations on his reinstatement application [*Id.*]. No reasonable finder of fact could

---

[7] *See Wheeler v. Glen Falls Ins. Co.*, 513 S.W.2d 179, 183 (Tenn. 1974) ("[A] substantial school of thought supports the proposition that alcoholism is a disease."); *see also Deakins v. Deakins*, No. E2008-00074-COA-R3-CV, 2009 WL 3126245, at * 11 (Tenn. Ct. App. Sep. 30, 2009) (referencing expert testimony that "alcoholism is considered a disease by the American Medical Association.").

resolve this issue in favor of Ms. Yarnell based on all of the above. Summary judgment is appropriate for this reason.

As noted, Ms. Yarnell contends that the alleged misrepresentations were not attached to the policy as required by Tenn. Code Ann. § 56-7-2307(4), and therefore cannot be used by Transamerica to void the policy [Doc. 43-5]. Tenn. Code Ann. § 56-7-2307(4) provides that "all statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties, and . . . no such statement shall void [an insurance] policy unless it is contained in a written application, and a copy of the application is endorsed upon or attached to the policy when issued."

As Transamerica correctly points out, however, Tenn. Code Ann. § 56-7-2307(4) does not deal with the "question of reinstating a lapsed policy." *Linder*, 255 S.W. at 45. That question is instead governed by well-settled common law. "[I]t not being required by the common law that such application shall be made a part of or attached to the policy, [an insurance company] is not precluded from relying upon the misrepresentations made therein as a defense to the policy sued on." *Id.* The fact that the reinstatement application was not attached to the reinstated policy is thus of no legal consequence.

Transamerica has demonstrated by an abundance of sound proof that no genuine issue of material fact exists in this case. Ms. Yarnell, by contrast, has sought to evade that proof by relying upon inapplicable statutory technicalities. Such evasion is unavailing. Summary judgment will be entered for Transamerica.

**V.     Conclusion**

For all of the reasons set forth above, SunTrust Investment Services, Inc.'s Motion for Summary Judgment [Doc. 34] will be denied as moot.  Transamerica's Motion for Summary Judgment [Doc. 36] will be granted.  SunTrust's Motion to Strike the Response to the Reply Brief in Support of the Motion for Summary Judgment or, in the Alternative, Request to Submit Rebuttal Sur-Reply Brief [Doc. 62] will be denied as moot.  Transamerica's Motion to Strike Plaintiff's Response to the Reply Brief in Support of Motion for Summary Judgment [Doc. 60] will be granted.

An order reflecting this opinion will be entered.


s/ Thomas A. Varlan                          
UNITED STATES DISTRICT JUDGE