**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name:  11a0579n.06

No. 10-5367

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED

*Aug 17, 2011*

LEONARD GREEN, Clerk

| | |
|---|---|
| LAURA YARNELL, | ) |
| | ) |
| **Plaintiff–Appellant,** | ) |
| | ) |
| v. | ) |
| | ) |
| T R A N S A M E R I C A    L I F E | ) |
| INSURANCE CO., et al., | ) |
| | ) |
| **Defendants–Appellees.** | ) |
| ‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗ | ) |

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF TENNESSEE

**O P I N I O N**

Before:  MOORE and GIBBONS, Circuit Judges; BORMAN, District Judge.[*]

**PAUL D. BORMAN, District Judge.**  Plaintiff-Appellant Laura Yarnell filed a complaint

in Tennessee state court alleging that Defendant-Appellee Transamerica Life Insurance Company

("Transamerica") breached its contract with her when it denied her claim to her husband's life

insurance benefits.  Transamerica removed the case to the United States District Court for the

Eastern District of Tennessee on the basis of diversity jurisdiction.  Yarnell then filed an amended

complaint adding Defendants-Appellees SunTrust Securities, Inc. and SunTrust Annuities, Inc.

("SunTrust"),[1] and asserting negligence claims against both Transamerica and SunTrust.  The

Federal District Court construed the complaint as bringing two claims against both Defendants: (1)

---

[*]The Honorable Paul D. Borman, United States District Judge for the Eastern District of
Michigan, sitting by designation.

[1]The Trial court modified and corrected the docket so that "SunTrust Securities, Inc." and
"SunTrust Annuities, Inc." collectively referred to "SunTrust Investment Services, Inc."

No. 10-5367
*Yarnell v. Transamerica Life Insurance Co., et al.*

negligence, and (2) breach of contract.  The District Court granted Transamerica's and SunTrust's motions to dismiss the negligence claim, dismissing all claims against SunTrust.  The District Court then granted Transamerica's motion for summary judgment, dismissing all remaining breach of contract claims against Transamerica.  Yarnell has timely appealed both of these dismissals. Because we find that the District Court did not err, we **AFFIRM**.

## I.  BACKGROUND

### A.  The Life Insurance Policy

On January 1, 2003, Transamerica issued a policy insuring the life of S. Cameron Yarnell in the amount of $1,000,000.  The beneficiary of the policy was an irrevocable trust created for the benefit of Mr. Yarnell's children, and the owner of the policy was Mr. Yarnell's wife, Plaintiff Laura Yarnell.  Chris Ford, an insurance agent with SunTrust, assisted Mr. Yarnell with his application for the life insurance policy.

The following policy provisions are relevant to the instant appeal.  The Yarnells were required to pay an annual premium on the policy, which Mr. Yarnell elected to pay in quarterly installments.  If a payment was missed, Transamerica would mail a notice to Mrs. Yarnell's last known address informing her that she had a 31-day grace period to make the overdue payment before the policy lapsed.[2]  If the payment was not made and the policy lapsed, it could be reinstated if the

---

[2]The Merriam-Webster Dictionary defines "lapse" as "(1) the termination or failure of a right or privilege through neglect to exercise it within some limit of time or through failure of some contingency . . . (3) termination of coverage (as by life insurance) for nonpayment of premiums[.]" Webster's Third New International Dictionary Unabridged 1272 (1993).

No. 10-5367
*Yarnell v. Transamerica Life Insurance Co., et al.*

premiums due at the time of reinstatement were paid, and if Mr. Yarnell was still considered

insurable by Transamerica's standards.  The policy also provided that it was incontestable if it was

"in force" for at least two years.  (R. 36, Def.'s Mot. Summ. J., Ex. C, Insurance Policy at 6.)

However, to keep the policy "in force," the Yarnells were required to pay each premium in advance.

A policy lapse and subsequent reinstatement therefore caused the two-year contestable period to

restart.

**B.  Transamerica's Premium Administration System**

During the period relevant to the instant case, Transamerica utilized the Life Insurance Policy

Administration System ("LIPAS"), a computer program that automatically tracked and generated the

various notices required for policy holders.  Specifically, LIPAS generated the following notices: (1)

a "premium notice," generated and mailed 30 days prior to the premium due date; (2) a "reminder

notice," generated and mailed 20 days after the premium due date if payment had not been received,

and (3) a "lapse notice," generated and mailed 53 days after the premium due date if payment had

not been received.

Transamerica describes the process of mailing the various notices as follows:

> At all relevant times, LIPAS, which was located in Kansas City,
> Missouri, generated and printed all the premium, reminder and lapse
> notices that were to be mailed on a given day.  A Transamerica
> employee then took the notices from LIPAS's printing room to its on-
> site Office Services Department.  An Office Services employee or
> employees then placed the printed notices into a mail sorting
> machine.  The sorting machine folded the notices, placed them in
> envelopes along with self-addressed return envelopes, sealed and
> affixed first-class postage to the envelopes.  Once this process was
> completed, the envelopes were taken to a "pre-sort house," located

3

No. 10-5367
*Yarnell v. Transamerica Life Insurance Co., et al.*

> approximately four to five blocks from the building that housed LIPAS. At the pre-sort house, the envelopes were sorted according to zip code. Thereafter, a U.S. Post Office employee or employees retrieved the envelopes from the pre-sort house for mailing.

(R. 36, Ex. E, Cox Aff. ¶ 14.) Transamerica did not keep hard copies of any notices during the relevant period, but instead relied on Billing Reference Lists ("BRLs") generated by LIPAS when it printed the notices.

The LIPAS system listed the Yarnells' mailing address as 1816 Hixson Pike, Chattanooga, Tennessee 37405. Mrs. Yarnell admits that she received mail from Transamerica at this address.

## C. Policy Lapse and Reinstatement

The BRL generated on September 6, 2006, reflects that a "premium" notice regarding the October 6, 2006 premium payment was printed for Mrs. Yarnell. A second BRL generated on October 26, 2006, reflects that a "reminder" notice was printed for Mrs. Yarnell, informing her that the 31-day grace period had begun. A third BRL generated on November 28, 2006, reflects that a "lapse" notice was printed for Mrs. Yarnell's policy. All three BRLs list the Hixson Pike address under the "Address Lines" column.

Mrs. Yarnell denies receiving "any letter or correspondence involving the lapse of this policy[.]" (R. 43, Pl.'s Opp'n Summ. J., Ex. 1, Yarnell Aff. ¶ 3.) However, she also admits that her husband was primarily responsible for all of the household bills. Although Mrs. Yarnell would occasionally open bills if she was temporarily responsible for making a payment, normally she would "just hand them all to [her husband]" to pay. (R. 36, Ex. B, Yarnell Dep. 29-30.) Mrs. Yarnell does not know what her husband did with the bills or notices from Transamerica after he paid them.

4

*No. 10-5367*
*Yarnell v. Transamerica Life Insurance Co., et al.*

On December 11, 2006, Transamerica received a check from Mr. Yarnell for the amount of the overdue policy premium, as well as the remittance stub from the November 28, 2006 lapse notice, evidencing that the BRL process was functioning properly. However, because a lapse had occurred, the policy required Mr. Yarnell to complete a reinstatement application. In January 2007, Transamerica received a completed reinstatement application from Mr. Yarnell dated December 12, 2006. Transamerica reinstated the policy based on Mr. Yarnell's answers in this application.

The Yarnells' insurance agent, Chris Ford, assisted Mr. Yarnell with the reinstatement application. Ford testified as follows:

> Q    Then, if you would, tell me as I asked you before, what happened when Mr. Yarnell came in and you completed this reinstatement application? How did that go?
>
> A    He came in, sat down. I actually read these questions to him verbally, waited for him to respond, and then I checked the boxes based on how he answered that question, or if there was something that he needed to say, I wrote those comments down on the application.

(R. 36, Ex. A, Ford Dep. 42.)

Question nine on the reinstatement application asked the following:

During the past five years, have you:

a) Had any illness, injury or disease?

b) Consulted or been examined by any physician?

c) Required any hospitalizations?

. . .

5

No. 10-5367
*Yarnell v. Transamerica Life Insurance Co., et al.*

(Cox Aff., Ex. E, Reinstatement Application.)  For parts a) and c), Ford, based on the responses he received from Mr. Yarnell, checked "NO" on the application.  For part b), he checked "YES" and wrote in the remarks section: "Broke four ribs in skiing accident in 2003."  (*Id.*)

Based on its review of Mr. Yarnell's records, Transamerica found that Mr. Yarnell did not disclose on his reinstatement application the following significant and undisputed medical history:

> On March 8, 2006, Mr. Yarnell was admitted to The Meadows, an alcohol and drug rehabilitation facility located in Wickenberg, Arizona.  Mr. Yarnell was an in-patient at The Meadows from March 8, 2006, to April 9, 2006.  While he was at The Meadows, a physician diagnosed Mr. Yarnell with alcohol dependence, major depression, and hypertension.  Prior to his discharge on April 9, 2006, another physician at the [sic] Meadows, Dr. William Firth, diagnosed Mr. Yarnell with alcohol dependence, depression, and hypertension.

> On June 13, 2006, Mr. Yarnell went to Memorial Hospital in Chattanooga, Tennessee, due to having drunk rubbing alcohol.  While Mr. Yarnell was at Memorial Hospital on June 13, 2006, a physician diagnosed him with alcoholism.
> On July 11, 2006, Mr. Yarnell was voluntarily admitted to the Cornerstone of Recovery, a rehabilitation facility located in Louisville, Tennessee.  Upon his admission, Mr. Yarnell was "slightly intoxicated" and his admitting diagnosis was "Acute Intoxication and/or Withdrawal Potential."  Mr. Yarnell was in medical detox at the Cornerstone of Recovery until July 14, 2006, at which time he was transferred to "Adult Residential."  Mr. Yarnell left the facility against medical advice on July 22, 2006.  While at the Cornerstone of Recovery, Mr. Yarnell received care from, among others, physician Gary O'Shaughnessy, the Medical Director.

> On or about July 24, 2006, Mr. Yarnell was admitted to the intensive out-patient therapy program at Parkridge Valley Hospital in Chattanooga, Tennessee due to alcoholism.  Mr. Yarnell was discharged from Parkridge on August 23, 2006.  While at Parkridge, Mr. Yarnell participated regularly in Alcoholics Anonymous.

6

No. 10-5367
*Yarnell v. Transamerica Life Insurance Co., et al.*

(R. 36, Ex. G, Livingston Aff. ¶ 12.)  Cameron Yarnell had thus spent more than 70 days in hospital or alcohol treatment programs within the nine months prior to his completion of the reinstatement application, all of which he failed to disclose to Transamerica.  Significantly, despite the direct inquiry in question nine, Mr. Yarnell did not disclose his June 13, 2006 hospitalization, or his consultations with either Dr. Firth or Dr. O'Shaughnessy.  If this medical history had been disclosed, Transamerica would have classified Cameron Yarnell as uninsurable due to alcoholism.  (Livingston Aff. ¶ 15.)

Mr. Yarnell died on October 3, 2007.  Transamerica subsequently refused payment under the policy based on material misrepresentations that rendered the reinstatement application void.

**D. Procedural History**

Laura Yarnell filed a complaint in the Chancery Court of Hamilton County, Tennessee, on January 29, 2009.  On February 27, 2009, Transamerica filed for removal on the basis of diversity jurisdiction.  Yarnell subsequently filed two amended complaints on September 1, 2009, and October 12, 2009.  The Second Amended Complaint alleges that Transamerica and SunTrust were negligent in hiring and training their employees and in failing to institute policies and procedures to prevent insurance policies from lapsing.  The Complaint also alleges that Transamerica and SunTrust failed to notify the Yarnells that their grace period had begun as required by the policy, and that their refusal to pay policy benefits was "without cause."  Transamerica and SunTrust both filed motions

No. 10-5367
*Yarnell v. Transamerica Life Insurance Co., et al.*

to dismiss and motions for summary judgment.  The District Court granted both motions to dismiss

and Transamerica's Motion for Summary Judgment.  This timely appeal followed.[3]

## II.  ANALYSIS

### A.  Standard of Review

This Court reviews *de novo* the district court's dismissal of a claim pursuant to Fed. R. Civ.

P. 12(b)(6).  *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).  In reviewing a Rule

12(b)(6) motion, a court must "construe the complaint in the light most favorable to the plaintiff,

accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff."  *Id*. at 476.

The motion "will be granted if the facts as alleged are insufficient to make a valid claim or if the

claim shows on its face that relief is barred by an affirmative defense."  *Riverview Health Institute*

*LLC v. Medical Mutual of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010).  This requires "more than labels

and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . .

Factual allegations must be enough to raise a right to relief above the speculative level."  *Bell*

---

[3]There were several procedural irregularities in the District Court regarding the motions to dismiss and for summary judgment.  However, these irregularities do not affect the merits of the instant appeal.

Transamerica and SunTrust initially filed motions to dismiss Yarnell's first Amended Complaint.  Yarnell filed a Response, but then also filed a second Amended Complaint without seeking leave to do so from the District Court.  Transamerica and SunTrust thereafter filed new Motions to Dismiss that incorporated the arguments raised in their initial motions.  Yarnell filed a Response to these Motions as well.

Transamerica and SunTrust also filed Motions for Summary Judgment.  Yarnell filed a response and both Defendants filed replies.  Yarnell then filed a response to both replies, attempting to raise additional arguments.  Transamerica filed a Motion to Strike Yarnell's response to the reply briefs, which was granted by the District Court.

No. 10-5367
*Yarnell v. Transamerica Life Insurance Co., et al.*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The complaint must "permit the court to infer more than a mere possibility of misconduct[.]"  *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1950 (2009).

      This Court reviews a district court's grant of summary judgment *de novo*.  *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 393 (6th Cir. 2008).  Summary judgment is proper under Fed. R. Civ. P. 56(c) where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact[.]"  The facts must be viewed and all reasonable inferences must be drawn in favor of the nonmoving party.  *Pennington v. State Farm Mut. Auto Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  The Court must ultimately determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

**B.  Negligence**

      When federal courts have jurisdiction over state law claims due to the diversity of the parties, the substantive law of the forum state governs.  *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).  The Tennessee Supreme Court has recognized the following elements with regard to a claim of negligence: "(1) a duty of care owed by the defendant to the plaintiff; (2) conduct falling below the applicable standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal cause."  *Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993).

*1.  Failure to Prevent Lapse of Policy*

No. 10-5367
*Yarnell v. Transamerica Life Insurance Co., et al.*

Yarnell alleges that Transamerica and SunTrust were negligent in allowing premiums to be unpaid on policies, causing them to lapse. The Trial court dismissed Yarnell's negligence claims, finding that she had not established that either insurer owed her a duty to prevent the insurance policy from lapsing. Yarnell argues that this was error, relying primarily on *Wood v. Newman, Hayes & Dixon Insurance Agency*, 905 S.W.2d 559 (Tenn. 1995), which states:

> It is also well established that an insurance agent employed to maintain insurance coverage for a client may be held liable on a negligence theory if the agent fails to use reasonable care and diligence in continuing the insurance, either by obtaining a renewal or replacement policy or by properly maintaining an existing policy.

*Id*. at 562. Transamerica and SunTrust argue that, absent an agreement creating a continuing responsibility to the insured, an insurer has no duty to prevent the lapse of an insurance policy.

"[T]he existence or nonexistence of a duty owed to the plaintiff by the defendant is entirely a question of law for the court." *Carson v. Headrick*, 900 S.W.2d 685, 690 (Tenn. 1995). Tennessee courts have consistently held that a duty to prevent an insurance policy from lapsing only arises where there is an express or implied agreement to maintain coverage on behalf of the insured. *See Ezell v. Associates Capital Corp.*, 518 S.W.2d 232 (Tenn. 1974) (finding the defendant liable under an implied contract to procure and maintain collision insurance for the plaintiff's vehicle); *Nidiffer v. Clinchfield R.R. Co.*, 600 S.W.2d 242, 246 (Tenn. App. 1980) (holding that holders of group life insurance certificates had no vested right to continuation of the policy "[i]n the absence of a provision in the policy or certificate to the contrary or other independent contract . . . .")

No. 10-5367
*Yarnell v. Transamerica Life Insurance Co., et al.*

The language from *Wood* that Appellant relies on is unavailing.  In that case, plaintiff, who owned and operated a marina, employed the defendant insurance agency to procure "all-risk" insurance for the marina.  *Wood*, 905 S.W.2d at 560.  The "all-risk" policy included ice and snow damage.  *Id*.  When the policy was nearing its expiration, plaintiff asked defendant to procure a like replacement policy.  *Id*.  Defendant was unable to find another "all-risk" policy, however, and instead purchased insurance covering only "named perils."  *Id*.  Defendant informed plaintiff that the new policy included "extended coverage," but did not disclose that ice and snow coverage was excluded.  *Id*.  When a subsequent ice and snow storm damaged plaintiff's marina and the insurance carrier declined coverage, plaintiff sued defendant, alleging that defendant's agent was negligent for failing to disclose that the new policy did not cover ice and snow damage.  *Id*. at 561.

The defendant agency in *Wood* was therefore "employed to maintain insurance coverage" because the plaintiff had expressly directed it to procure a like replacement policy.  *Wood*, 905 S.W.2d at 562.  The defendant's liability thus arose out of an express contract to maintain the insurance policy, which created the necessary duty element.  This is distinguishable from the instant case, where SunTrust's agent had procured an insurance policy for the Yarnells, and the policy lapsed according to its terms due to Mr. Yarnell's failure to timely pay the premium.

*Quintana v. Tennessee Farmers Mutual Insurance Co.*, 774 S.W.2d 630 (Tenn. App. 1989), presents a more appropriate comparison with the instant case.  In *Quintana*, the plaintiffs purchased property insurance from defendants through an independent insurance agent.  *Id*. at 631.  After plaintiffs filed two claims due to their farm being burglarized on two different occasions, defendants

11

No. 10-5367
*Yarnell v. Transamerica Life Insurance Co., et al.*

decided to cancel the plaintiffs' property insurance policy. *Id*. Defendant sent plaintiffs and their insurance agent letters stating that the policy had been canceled; the insurance agent received his letter, but plaintiffs were on vacation in Texas when their letter arrived. *Id*. The plaintiffs' insurance agent did not attempt to contact them after receiving the notice, even though he was aware the plaintiffs were on vacation. *Id*. at 632. After the insurance was cancelled, but before plaintiffs had returned from vacation, an arson fire destroyed the plaintiffs' barn. *Id*.

The Tennessee Court of Appeals entered judgment in favor of defendants, noting that, "[i]n the absence of an agreement creating continuing responsibilities, an insurance agent's obligation to a client ends when the agent obtains the insurance for the client." *Quintana*, 774 S.W.2d at 634. The court held that, even though the plaintiffs had a long business relationship with their insurance agent, and the agent knew the plaintiffs had recently left for a vacation in Texas, he "did not have a duty to try to contact the [plaintiffs] when he received his copies of the cancellation letters." *Id*. That *Quintana* involved casualty insurance and the instant case involves life insurance is not of critical importance.

The Complaint in the instant case does not allege the existence of any agreement to continue the life insurance policy or prevent its lapsing. Without such an agreement, neither Transamerica nor SunTrust had an affirmative duty to do so. Absent a duty to Appellant, Transamerica and SunTrust are not liable under a negligence theory. The District Court therefore did not err in dismissing Yarnell's negligence claim.

12

No. 10-5367
*Yarnell v. Transamerica Life Insurance Co., et al.*

Yarnell contends that the opinion testimony of her proposed expert witness, William Britain

Oehmig, contradicts Transamerica's and SunTrust's assertions that no duty exists to prevent a policy

from lapsing.  It does not.

Oehmig's affidavit states that Ford could have done more to prevent the Yarnells' policy

from lapsing.  This would be some evidence that, if a duty existed, Ford may have breached the

standard of care.  *See Bradshaw*, 854 S.W.2d at 869.  However, Oehmig's affidavit cannot create

a legal duty where Tennessee law recognizes none.  *See Carson*, 900 S.W.2d at 690.  Further,

Oehmig's deposition testimony concedes that there is no law or rule applicable to insurance agents

that establishes a duty to prevent a policy from lapsing:

> Q    Is there anything with Chris Ford's signature on it obligating
>      himself to provide notice to either Cameron Yarnell or Laura
>      Yarnell?
>
> A    We are dealing in the moral - -
>
> Q    Would you answer my question.
>
> A    I am.  We're dealing in the moral and ethical world, where,
>      oftentimes, things are not written.
>
> (. . . .)
>
> Q    You have not seen any such documents, have you?
>
> A    I have not seen and I don't know of the existence, one way or
>      the other.

13

No. 10-5367
*Yarnell v. Transamerica Life Insurance Co., et al.*

(R.43, Pl.'s Supp. Resp. Summ. J., Ex. A - Oehmig Dep. 53.)   Moreover, Ford's deposition

testimony reflects that early-on he informed Mr. Yarnell of an automatic premium withdraw option,

and Yarnell rejected it:

> Q    Well, did you ever recommend to [Mr. Yarnell] that he put an automatic premium draw [on his account]?
>
> A    I think at some point we did, yes.
>
> (. . . .)
>
> Q    Why didn't you do it earlier?
>
> A    When I asked – when I mentioned this to Mr. Yarnell, it was something that he did not want to do at that time.
>
> Q    So he didn't – he didn't do it?
>
> A    He did not want to do it.
>
> Q    Are you sure about that?
>
> A    Yes.
>
> Q    Did he ever, sir, sign a premium authorization to SunTrust to take the premiums out?
>
> A    My understanding at the end, yes, he did.
>
> (. . . .)
>
> Q    How did that come up about the automatic premium withdraw?
>
> A    I think – well, let me rephrase that.  After two reinstatement applications we suggested – I suggested that he do an automatic bank draft versus paying for the policy with a check and run the risk of having the policy lapse again.

14

No. 10-5367
*Yarnell v. Transamerica Life Insurance Co., et al.*

> Q     Why didn't you suggest that he do that after the first one?
>
> A     I was going off the first comment that Mr. Yarnell said.  I
>         don't want to do a bank draft.
>
> Q     Once again, why did you ask him that again?
>
> A     It had happened twice.

(Ford Dep. 70-71.)

In summary, there was no legal or contractual basis requiring Ford to recommend that Yarnell participate in automatic premium withdrawal.  Further, Ford did early-on inform Yarnell of that option, and Yarnell rejected it.  Accordingly, we affirm the District Court's dismissal of Yarnell's negligence claims against both Transamerica and SunTrust.

**B.  Breach of Contract**

Yarnell alleges that Transamerica failed to notify her that the policy was entering the grace period, and that Transamerica refused to pay the proceeds of the policy "without cause."  The two issues relevant to the instant determination are therefore: (1) whether Transamerica satisfied the notification requirements set forth in the policy and under Tennessee law, and (2) whether the reinstatement application contained material misstatements that justified Transamerica's refusal to pay the insurance proceeds.

15

No. 10-5367
*Yarnell v. Transamerica Life Insurance Co., et al.*

The District Court granted summary judgment for Transamerica,[4] finding that there was no issue of material fact as to either of these issues. Yarnell now argues that her affidavit creates a question of fact as to whether Transamerica complied with the grace period and lapse notice requirements, that Transamerica's proof of mailing the requisite notices is insufficient under Tennessee law, and that Mr. Oehmig's affidavit creates a question of fact. In response, Transamerica argues that no reasonable juror could conclude that Mr. Yarnell did not make a misrepresentation on the application for reinstatement, and that it need only produce evidence that it mailed the requisite notices, not that the Yarnells actually received them.

*1. Notification Requirement*

The policy provided that, once the grace period began, Transamerica would notify Mrs. Yarnell "by sending a notice to [her] last known address . . . ." (Insurance Policy at 5) Under Tennessee law, the policy could not lapse within six months of nonpayment "unless a written or printed notice . . . has been duly addressed and mailed with the required postage affixed, to the policy owner at the policy owner's last known post office address as shown by the records of the insurance company." Tenn. Code § 56-7-2303(a).

Yarnell argues that a question of fact exists as to whether Transamerica mailed the grace period notice and lapse notice. As evidence that it did mail the required notices to the Yarnells,

---

[4]Because the insurance policy was between the Yarnells and Transamerica, not SunTrust, the District Court found that Yarnell's breach of contract allegation did not state a claim upon which relief could be granted as to SunTrust.

16

No. 10-5367
*Yarnell v. Transamerica Life Insurance Co., et al.*

Transamerica has produced the affidavit of John Cox, which describes the process by which notices were generated by LIPAS and mailed to policyholders. Tenn. Code § 56-7-2303(b) states:

> The affidavit of any responsible officer, clerk or agent of the insurance company authorized to mail the notice that it is the standard practice of the company to duly address and mail to policyowners the notice required by this section shall be prima facie evidence that the notice has been duly given.

*See also Cherokee Ins. Co. v. Hardin*, 302 S.W.2d 817, 819 (Tenn. 1957) (holding that evidence of the regular routine in a business office can satisfy the burden of proving the mailing of a notice by an insurance company); *Blurton v. Grange Ins. & Cas. Co.*, 159 S.W.3d 1, 10-11 (Tenn. App. 2004) (same).

Yarnell argues that the Cox affidavit does not satisfy this provision because, although it indicates that a clerk is authorized to mail the notice, it does not state that Cox is authorized to mail the notice. Yarnell further argues that this section only applies to notices regarding insurance premiums, not notices regarding the start of the grace period.

Regardless of the technical requirements of § 56-7-2303(b), Transamerica has produced evidence that it mailed the required notices to the Yarnells. Most notably, Transamerica produced the actual remittance stub from the lapse notice sent to the Yarnells, that was sent back to Transamerica by Mr. Yarnell. In addition, Transamerica has produced the BRLs generated each time a notice was sent to the Yarnells. These lists reflect specific dates when a notice was mailed to the Yarnells, the type of notice sent, and indicate that each notice was addressed to the Hixson Pike address.

No. 10-5367
*Yarnell v. Transamerica Life Insurance Co., et al.*

Yarnell argues, however, that the BRL printouts are insufficient proof of mailing, relying on *Finch v. Monumental Life Insurance Co.*, 820 F.2d 1426 (6th Cir. 1987).  In *Finch*, the defendant insurer challenged the sufficiency of evidence after a jury trial finding the insurer liable.  *Id*. at 1427.  While there was no direct evidence that the defendant had mailed a premium notice to the plaintiff, the insurer argued that the computer responsible for producing the notices had been working properly during the time period when the notices in dispute would have been sent.  *Id*. at 1431.  This Court found that the defendant had failed to show that the notice had been sent.  *Id*.

The BRLs produced by Transamerica are much more detailed than the evidence produced by the defendant in *Finch*.  They include the specific dates the notices were mailed to the Yarnells and the address to which the notices were mailed.  Moreover, Transamerica has produced evidence of its customary business practice of mailing notices.  *See Groover v. Torkell*, 645 S.W.2d 403, 407 (Tenn. App. 1982) (holding that "evidence that an act was customarily done under like circumstances will be received as evidence that it was done on the particular occasion.")   Furthermore, Transamerica has produced the remittance stub Mr. Yarnell mailed with a late payment – evidence that the Yarnells actually received the lapse notice.

In rebuttal, Mrs. Yarnell has submitted her own affidavit, stating that she "never received any letter or correspondence about any grace period taking effect under this policy[,]" and "never received any letter or correspondence involving the lapse of this policy from either [Transamerica or SunTrust]."  (Yarnell Aff. ¶ 3.)  However, this affidavit does not pass muster, because Mrs. Yarnell's assertions are greatly undermined by her own deposition testimony.  The affidavit also

No. 10-5367
*Yarnell v. Transamerica Life Insurance Co., et al.*

offers no specific facts beyond the conclusory statement that Mrs. Yarnell never read a lapse notice.

She did testify that she received mail from Transamerica but did not open and read the letters:

Q      . . . When a bill came from Transamerica, who was it addressed to?

A      I have no idea.

(. . . .)

Q      Would you ever see these bills in the mail?

A      Not – I mean, only when I was in charge –

Q      Okay.

A      – did I actually open, look and see.

Q      Okay.

A      Otherwise, I  – yeah.

Q      Let's say that you went and picked up your mail and there was a bill from Transamerica in there.  What would – what would you do with that while Mr. Yarnell was in charge of paying the bills?

A      I'd just hand them all to him.

Q      Okay.  And do you know what he would do with them once you gave them to him?

A      No.

Q      Okay.  If – would he, on occasion, pick up those bills himself from the mail?

A      I mean, I'm sure he picked the mail up –

19

No. 10-5367
*Yarnell v. Transamerica Life Insurance Co., et al.*

> Q      Sure.
>
> A      – every now and then.
>
> Q      Okay.  Do you have any of those notices now?
>
> A      No.

(Yarnell Dep. 29-30.)

Thus, Mrs. Yarnell's blanket assertion in her affidavit that she never received the notices is contradicted by her deposition testimony that she did receive mail but didn't open it up and/or read the letters.

Accordingly, in the instant case, the affidavit is not sufficient to create an issue of material fact in light of the evidence from Mrs. Yarnell's deposition and the evidence of mailing produced by Transamerica.  *See Emmons v. McLaughlin*, 874 F.2d 351, 358 (6th Cir. 1989) (holding that affidavits that "merely repeated the vague and conclusory allegations" in the complaint "were insufficient to generate a genuine issue of material fact."); *see also Dolan v. Guarantee Trust Life Ins. Co.*, 485 F. Supp. 2d 1046, 1054 (S.D. Iowa 2007) (holding that "[plaintiff's] statement that 'we' did not receive the notice mailed to [plaintiff's husband], is legally insufficient to generate a genuine issue of material fact on the issue of whether [defendant] mailed the notice.")  We therefore conclude that the District Court did not err in granting Transamerica's Motion for Summary Judgment on this issue.

*2.  Material Misrepresentation*

Tenn. Code Ann. § 56-7-103 states:

20

*No. 10-5367*
*Yarnell v. Transamerica Life Insurance Co., et al.*

> No written or oral misrepresentation . . . in the application for
> contract or policy of insurance, by the insured or in the insured's
> behalf, shall be deemed material or defeat or void the policy or
> prevent its attaching, unless the misrepresentation or warranty is
> made with actual intent to deceive, or unless the matter represented
> increases the risk of loss.

"A misrepresentation in an application for insurance increases the insurance company's risk of loss if it naturally and reasonably influences the judgment of the insurer in making the contract." *Lane v. Am. Gen. Life and Acc. Ins. Co.*, 252 S.W.3d 289, 295-96 (Tenn. App. 2007). While intentional misrepresentation is a question of fact, "determining whether a particular misrepresentation increases an insurance company's risk of loss is a question of law for the court." *Smith v. Tenn. Farmers Life Reassurance Co.*, 210 S.W.3d 584, 589 (Tenn. App. 2006).

Yarnell argues that the misrepresentations contained in the reinstatement application should not have voided the policy because they were not attached to the policy, relying on Tenn. Code § 56-7-2307(4). However, Tennessee courts have long held this section inapplicable to applications for reinstatement. *See Linder v. Metropolitan Life Ins.* Co., 255 S.W. 43 (Tenn. 1923); *Duncan v. Penn Mut. Life Ins. Co.*, 65 S.W.2d 882, 895 (Tenn. App. 1933). This argument is therefore unavailing.

Yarnell next argues that insurance agent Ford's deposition testimony regarding his assisting Mr. Yarnell with the reinstatement application creates a question of fact. Relying on *Morrison v. Allen*, No. M2007-01244-COA-R3-CV, 2009 WL 230220 (Tenn. App. Jan. 30, 2009) (unpublished), Yarnell argues that Ford's testimony should not be accepted as true because she cannot produce her

No. 10-5367
*Yarnell v. Transamerica Life Insurance Co., et al.*

husband to rebut Ford's statements.[5]  Because Mr. Ford is an employee of SunTrust, Transamerica

does not respond to this argument.  SunTrust, however,  has responded in its brief on appeal.

SunTrust argues that the reasoning in *Morrison* is inapplicable to the instant case.  *Morrison*

involved a claim against an insurance agent for failure to procure an enforceable life insurance

policy.  2009 WL 230220 at *1.  The insurance agents in that case, Paul Allen and Jody Roberts,

filled out life insurance applications for plaintiff and her husband "based on information [Allen]

allege[d] Mr. and Mrs. Morrison provided in person . . . or over the phone . . . ."  *Id*.  Allen then

mailed the completed applications to plaintiff and her husband "with 'sticky notes' indicating where

to sign."  *Id*.  Plaintiff alleged that neither she nor her husband read the applications before signing

them.  *Id*.

After plaintiff's husband died, the insurance company discovered that the life insurance

application contained a misstatement and denied plaintiff's claim.  *Id*.  Plaintiff then brought suit

against Allen and his employer for failure to procure an enforceable life insurance policy.  *Id*.  The

---

[5]We note that this argument was not addressed by the District Court because Yarnell initially raised it in her response to SunTrust's reply, which was stricken by the trial court.  "While we have never articulated precisely what constitutes raising an issue with the district court, we have found issues to be waived when they are raised for the first time in motions requesting reconsideration or in replies to responses."  *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008).  *See Am. Fam. Prepaid Legal Corp. v. Columbus Bar Ass'n.*, 498 F.3d 328, 335 (6th Cir. 2007) (holding that argument raised for the first time in motion to clarify should be deemed waived); *but see Lexicon, Inc. v. Safeco Ins. Co. of Am., Inc.*, 436 F.3d 662, 670 n. 6 (6th Cir. 2006) (holding that argument was not waived where it was raised for the first time in a response to a reply brief, where the district court addressed the argument and both parties fully briefed the argument on appeal).  While it is arguable here that Yarnell has waived this argument, we will address it.

No. 10-5367
*Yarnell v. Transamerica Life Insurance Co., et al.*

trial court entered judgment in plaintiff's favor, and the Tennessee Court of Appeals affirmed. 2009 WL 230220 at *2.

The Tennessee Supreme Court recently issued an opinion affirming in part and reversing in part the court of appeals decision in *Morrison*. *See Morrison v. Allen*, 338 S.W.3d 417 (Tenn. 2011). In its opinion, the Tennessee Supreme Court recognized that, when an insurance claim is denied, "(1) a cause of action may arise for failure of the agents to procure a policy not subject to contest; [and] (2) the claim for failure to procure may be actionable, notwithstanding the policy holders' admission that they did not read the insurance application . . . ." *Id*. at 420. The court then noted that failure to procure claims are distinct from direct claims against an insurer, citing *Beasley v. Metropolitan Life Insurance Co.*, 229 S.W.2d 146 (Tenn. 1950). *Id*. at 428. The court stated as follows:

> In addressing a suit by the insured directly against the insurer, and not involving a claim against an agent for failure to procure, this Court observed that contract principles placed a duty on Beasley to "learn the contents of a written contract" before signing and, in consequence, he could not sustain a claim against the insurer.

*Id*. (citing *Beasley*, 229 S.W.2d at 148).

Turning to the instant matter, Yarnell has not stated a claim against Ford for failure to procure an enforceable insurance policy. Indeed, Ford is not named anywhere in Yarnell's Complaint. Rather, the Complaint alleges that Transamerica and SunTrust were negligent in allowing the policy to lapse. Yarnell's claim should therefore be construed as a direct claim against an insurer, not a failure to procure claim against an insurance agent. Accordingly, the reasoning in *Morrison* is inapplicable in the instant matter.

23

No. 10-5367
*Yarnell v. Transamerica Life Insurance Co., et al.*

The facts in the instant appeal more closely resemble *Beasley*. In that case, the defendant insurance agent assisted plaintiff's husband with his application for life insurance. *Beasley*, 229 S.W.2d at 147. Plaintiff testified that her husband answered the questions truthfully, "but that without her knowledge the agent changed the answers . . . ." *Id*. Plaintiff also testified that she signed the application without reading it. *Id*. After her husband died, the insurer denied plaintiff's claim and she brought suit. *Id*. The Tennessee Supreme Court held that plaintiff had a duty to read the contract and ordered that judgment should have been entered in favor of the defendants. *Id*. at 148. *See also Giles v. Allstate Ins. Co., Inc.*, 871 S.W.2d 154, 156 (Tenn. App. 1993). Mrs. Yarnell's failure to read the reinstatement application before signing it does not abrogate the material misrepresentations contained in the application under Tennessee law.

Finally, the trial court did not err in granting summary judgment on the issue of Mr. Yarnells' material misrepresentations in the reinstatement application. Mr. Yarnell had been diagnosed with alcoholism prior to completing the reinstatement application. He had spent more than 70 days in various alcohol treatment centers in the months prior to completing the reinstatement application. He had also been admitted to the hospital at least once, and he had consulted with at least two physicians concerning alcohol abuse. However, he did not disclose any of this information on the application. Transamerica has presented evidence that Mr. Yarnell's alcoholism would have increased its risk of loss on his life insurance policy. "[A] showing that the insurer was denied information that it, in good faith, sought and deemed necessary to an honest appraisal of insurability is sufficient to establish the grounds for an increased risk of loss." *Smith*, 210 S.W.3d at 590.

24

No. 10-5367
*Yarnell v. Transamerica Life Insurance Co., et al.*

Yarnell has not produced any evidence refuting this proposition, and no reasonable finder of fact could resolve the issue in her favor.  Accordingly, we find that the District Court did not err in granting summary judgment in favor of Transamerica.[6]

### III.  CONCLUSION

Because we have determined that the trial court did not err in dismissing Yarnell's claims against Transamerica and SunTrust, we **AFFIRM** the judgment below.

---

[6]Because summary judgment was warranted on Yarnell's breach of contract claim against Transamerica, we do not address Yarnell's arguments regarding SunTrust's liability as Transamerica's agent under the insurance contract.

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

Leonard Green
Clerk

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed: August 17, 2011

Mr. Bruce C. Bailey
Chambliss, Bahner & Stophel
Two Union Square
Suite 1000 Tallan Building
Chattanooga, TN 37402

Mr. Marvin B. Berke
Berke, Berke & Berke
420 Frazier Avenue
P.O. Box 4747
Chattanooga, TN 37405

Ms. Megan England Demastus
Berke, Berke & Berke
420 Frazier Avenue
P.O. Box 4747
Chattanooga, TN 37405

Mr. D. Aaron Love
Chambliss, Bahner & Stophel
Two Union Square
Suite 1000 Tallan Building
Chattanooga, TN 37402

Mr. John Edward Winters
Kramer Rayson
P.O. Box 629
Knoxville, TN 37901

Re:  Case No. 10-5367, *Laura Yarnell v. Transamerica Life Insurance Co, et al*
Originating Case No. : 09-00049

Dear Sir or Madam,

    The Court issued the enclosed (Order/Opinion) today in this case.

                                        Sincerely yours,


                                        s/Nancy Barnes
                                        Senior Case Manager
                                        Direct Dial No. 513-564-7022

cc:  Ms. Patricia L. McNutt

Enclosure

Mandate to issue